# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL D. SARGENT and<br>JACQUELINE SARGENT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 06-cv-1042-MJR |
| | ) | |
| CASSENS CORPORATION, CASSENS &<br>SONS, INC., COTTRELL, INC., DAIMLER-<br>CHRYSLER CORP. f/k/a CHRYSLER CORP.,<br>JO ANN SHASHEK TRUST, ALBERT<br>CASSENS FLP, ALBERT CASSENS and<br>KAY CASSENS, | )<br>)<br>)<br>)<br>)<br>) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM and ORDER

**REAGAN, District Judge:**

### I.    INTRODUCTION

Plaintiffs, Michael D. Sargent and Jacqueline Sargent, bring this action in connection with an accident that occurred on December 30, 2004, in which Sargent, a car hauler employed by Cassens Transport Company, injured his low back and related areas while attempting to climb onto a rig manufactured by Defendant Cottrell, Inc.  Plaintiffs assert claims for relief based upon strict liability, negligence, breach of implied warranty, alter ego, negligence - direct liability, breach of contract, consumer fraud and deceptive business practices, and loss of consortium.

Cottrell removed this case from the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, to this Court under federal diversity jurisdiction.  Cottrell asserts that its co-Defendants, Cassens Corporation, Cassens & Sons, Inc., Jo Ann Shashek Trust and Albert

Cassens FLP, have been fraudulently joined to defeat diversity jurisdiction.[1]  Plaintiffs move to remand this case to state court on the basis of procedural defects in removal and on the basis that Cottrell failed to satisfy its burden, through competent proof, of the amount in controversy. The motion for remand has been fully briefed and is ready for disposition.

## II.   DISCUSSION

### A.   Legal Standard

Removal based on diversity requires that the parties be of diverse state citizenship, that is, no plaintiff may be a citizen of the same state as any defendant, and that the amount in controversy exceed $75,000, exclusive of interest and costs.  *See* **28 U.S.C. §§ 1332, 1441.** *See also Rubel v. Pfizer Inc.*, **361 F.3d 1016, 1017 (7th Cir. 2004)**.  The party seeking removal has the burden of establishing federal jurisdiction.  *Doe v. Allied-Signal, Inc.,* **985 F.2d 908, 911 (7th Cir. 1993)**.  This Court's exercise of subject matter jurisdiction is constrained by the well-established rule that federal district courts must interpret the removal statute narrowly and "presume that the plaintiff may choose his or her forum." *Doe,* **985 F.2d at 911**.  Any doubts regarding jurisdiction should be resolved in favor of remand to state court.  *Id. (citing Jones v. General Tire & Rubber*

---

[1] It is undisputed that Defendant Kay Cassens is a citizen of Montana.  The citizenship of Albert Cassens is disputed and will be considered by the Court below.  The citizenship of Cassens Transport Company, respondent in discovery, is irrelevant for diversity purposes.  A "respondent in discovery" is the creature of a special provision of Illinois law that permits a plaintiff to seek no relief other than the possible provision of information relevant to plaintiff's underlying substantive claims." *Wisniewski v. City of Chicago,* **1998 WL 895746, *1 n.1 (N.D.Ill. 1998).**  "As such, those respondents are purely nominal defendants for federal purposes, so that *they play no part in any removal equation. . . ." Id.* **(emphasis added).**  Accordingly, as far as federal courts are concerned, a "respondent in discovery" is not a party to a lawsuit and is irrelevant for diversity purposes.  *Jass v. Prudential Health Care Plan, Inc.,* **88 F.3d 1482, 1485 n.3 (7th Cir. 1996); *Ford v. Mannesmann Dematic Corp.,* 2000 WL 1469371, *4 (N.D.Ill. 2000); *Murphy v. Schering Corp.,* 878 F.Supp.124, 125-26 (N.D.Ill. 1995).**

***Co.*, 541 F.2d 660, 664 (7th Cir. 1976))**; *see also Krueger v. Cartwright,* **966 F.2d 928, 930 (7th Cir. 1993) (Federal district courts "are obliged to police the constitutional and statutory limitations on their jurisdiction.")**.

### B. Defects in Removal Procedure

#### 1. Forum Defendant Rule

Plaintiffs' first ground for remand is the "forum defendant" rule which holds that a case may not be removed on the basis of diversity jurisdiction where one or more defendants is a citizen of the state in which the action is pending. ***See* 28 U.S.C. § 1441(b) (providing that a case in which the asserted basis for federal subject matter jurisdiction is diversity "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."); *LaMotte v. Roundy's, Inc.*, 27 F.3d 314, 315 (7th Cir. 1994) (*quoting* 28 U.S.C. § 1441(b)) ("[C]ases not involving federal questions are 'removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'")**.

Under the rationale of the forum defendant rule, Cottrell's removal is improper if one or more of the Defendants, properly joined, is a citizen of Illinois. It is undisputed that Cassens Corporation, Cassens & Sons, Jo Ann Shashek Trust and Albert Cassens FLP are Illinois citizens. However, Cottrell's right of removal ". . . cannot be defeated by a fraudulent joinder of a resident defendant having no connection with the controversy." ***Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97 (1921)**. Only uncontroverted evidence showing unmistakably that a diversity-defeating defendant has absolutely no connection with the events giving rise to a case will establish fraudulent joinder. ***See, e. g., Faucett v. Ingersoll-Rand Mining & Mach. Co.*, 960 F.2d 653, 654-55 (7th Cir.**

**1992) (In a products liability action, fraudulent joinder was established by a diversity-defeating defendant's uncontradicted affidavit stating that he had nothing to do with the machine at issue)**.  Accordingly, the Court must determine if Defendants, Cassens Corporation, Cassens & Sons, Jo Ann Shashek Trust and Albert Cassens FLP, have no connection with the controversy and, thus, were fraudulently joined.  The Court will first consider whether Defendant Cassens & Sons is properly joined, because that determination governs one aspect of whether Cassens Corporation is properly joined.

### Cassens & Sons, Inc.

Plaintiffs allege that Cassens & Sons sold and/or distributed the trailer at issue, or profited from the sale of the rig, and placed the rig in the stream of commerce.  They contend that Cassens Corporation, through the direction of its corporate director Albert Cassens, directly controlled the actions of Cassens & Sons, forcing Cassens & Sons to handle the sales of rigs without profit in order to benefit Cassens Corporation.  The counts pleaded against Cassens & Sons sound in negligence and strict liability based on the purported ground that Cassens & Sons was a distributor of the product at issue.  The sole evidence Plaintiffs provide for their allegations is the statement of Kay Cassens that she buys Cottrell rigs through Cassens & Sons.  Doc. 22, Exhibit D, Kay Cassens Dep., 25:12-23.

Whether "rigs," in general, were purchased through Cassens & Sons is not relevant to the instant action if the specific rig at issue here was not bought or sold through Cassens & Sons.  Cottrell has submitted uncontroverted evidence that Cassens & Sons was not in the chain of title for the rig that is the subject of this lawsuit.  The rig was owned by Albert Cassens FLP.  Doc. 18, Exhibit C, Certificate of Title of a Vehicle; Exhibit D, Cottrell Invoice.  Cassens & Sons had no

" . . . involvement whatsoever regarding the sale, lease, delivery or distribution of the trailer/rig described in Plaintiff's Complaint, known as Unit No. 5492 and identified by VIN# 1C9VX10441G-148402 ."  Exhibit E, Clarence Brown Aff.  Only one injury is alleged, and only one rig is at issue. The evidence is that Defendant Cassens & Sons did not buy, sell, lease deliver or distribute that unit.

Accordingly, the Court finds that there is no reasonable possibility that Plaintiffs can maintain their cause of action against Cassens & Sons, Inc., and that Cassens & Sons has been fraudulently joined.  Consequently, the Court will disregard the citizenship of Cassens & Sons, Inc., in determining jurisdiction and **DISMISSES** ***with prejudice*** Defendant Cassens & Sons, Inc., from this cause of action.

### Cassens Corporation

Plaintiffs allege that Cassens Corporation, directly and through its individual owners/Cassens family members, was a participant in the distribution of the rig in question and served as commercial lessor of the rig.  The counts pleaded against Cassens Corporation sound in strict liability, alter ego, negligence - direct liability, breach of contract, consumer fraud and deceptive business practices, equitable estoppel and fraud.

The only specific evidence offered by Plaintiffs that Cassens Corporation was involved in the design or manufacture of the rig at issue or participated in the transactions at issue is both suspect and misleading.  Plaintiffs cite to the deposition of Raymond Abert, who worked for Cassens and Sons in an unspecified position for forty-five years, as evidence that Cassens Corporation directly controlled the actions of Cassens & Sons by forcing it to handle the sales of rigs without profit because "the stock of the dealership was owned by [Cassens Corporation]." *See* Doc. 22, Exhibit B-1.  The transcript of this section of Mr. Abert's deposition is as follows:

5

> Q.      There was no intercompany profit.  Does that mean that if you provided a product or a service to one of the Cassens companies, you had to do it at cost?
>
> A.      Yes.
>
> Q.      All right.  And that was because the overall group of companies would benefit by that; correct?
>
> A.      Not really.  I mean I didn't benefit by this other than to -- the headache of signing a check.
>
> Q.      I understand that.  I'm not asking you if you personally benefitted?
>
> A.      No, I mean --
>
> Q.      I'm asking you, what is your understanding as to --
>
> A.      As far as the dealership was concerned.  I mean, none of the dealership, other than the stock of the dealership was owned by --
>
> Q.      All right.  So, it's your understanding that the overall owners of the Cassens group of companies benefitted by the procedure where there was no intercompany profits being made on exchanges of products like this; correct?  That's your understanding?
>
> A.      Yes.

*Id*. 20:13-21:13.  Plaintiffs have lifted a phrase out of context, which, in context, is far from proving the participation of Cassens Corporation in the transactions at issue.  Worse still, having cut the deponent off in mid-sentence, Plaintiffs' counsel inserted "Cassens Corporation" as the missing conclusion to the sentence.  *Id*. 21:4-6.  In Abert's deposition, there is a prior reference to the "overall group of companies," *see id.,* 20:18-20, and a subsequent reference to the "Cassens group of companies," *see id*., 21:7-11.  Reviewing the preceding pages, the Court finds numerous references to "Cassens & Sons" and to "Cassens Transport," but there is not one specific reference naming "Cassens Corporation" and identifying its role as to anything at issue herein.  *Id.,* 14:1-21:6.

        The Court wishes that it could say that Cottrell did a better job on this issue.  Unfortunately, it cannot.  Cottrell asserts that Cassens Corporation's only corporate function is to serve as a holding company for other Cassens-related entities.  As such, Cassens Corporation was not the owner, lessor, or distributor of the trailer at issue.  Cottrell submits the deposition and affidavit of Allen Cassens as evidence that Cassens Corporation 1) is a holding company with no

6

other functions; 2) has no involvement in the operation of other Cassens companies; 3) has no employees; 4) is not an operating company; and 5) has as its sole purpose the filing a consolidated tax return.  *See* Doc. 18, Exhibit P, Allen Cassens Dep.; Exhibit Q, Allen Cassens Aff.

First, Allen Cassen's affidavit makes no reference whatsoever to Cassens Corporation.  *Id.,* Exhibit Q.  It is almost entirely devoted to the role of A. C. Leasing with respect to Cottrell trailers, with scattered references to the role of Cassens Transport.  *Id.*  Yet, Cottrell cites this as evidence that Cassens Corporation is a holding company with no other function.  Second, as to the deposition of Allen Cassens, Cottrell cites to pages 11, 16-17, 21, 34 and 89.  *Id.*, Exhibit P. Of these, Cottrell has submitted only page 17, in which Allen Cassens states that he does not own most of the stock in Cassens Corporation, either as a lessor or an individual, which appears to be completely irrelevant to the role and function of Cassens Corporation.  *See id.*  The Court has reviewed the other pages submitted by Cottrell (3, 84, 87, 88, 90, 91) and finds them equally irrelevant to the issue of the functions of Cassens Corporation.  Neither the attorney nor a representative for Cassens Corporation was even present at the deposition.  *Id.*  87:16-24, 88:1-9.

On this record, the Court would prefer to leave the parties as it finds them, *i. e.,* "a plague o' both your houses," but the Court must decide this issue for the case to proceed.  Generally, courts ". . . cannot take notice of findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed."  ***General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997)**.  However, if a finding of fact satisfies "the indisputability requirement of Fed.R.Evid. 201(b)," it may satisfy the evidentiary criteria for judicial notice.  ***Id***.  The Court is well-acquainted with the issue at hand.  *See Sandage v. Cottrell*, Case No. 3:05-cv-00720-MJR (S.D.Ill.); *Rosenberg v. Cottrell*, Case No. 3:05-cv-00545-

MJR (S.D.Ill.).  In both *Sandage* and *Rosenberg*, actions involving injuries to car haulers who were employed by Cassens Transport Company, the Court was called upon to determine whether it was possible for the plaintiffs to state a claim against Cassens Corporation.  *Sandage*, at Doc. 90; *Rosenberg* at Doc. 97.  The Court found that Cassens Corporation had "no physical office, no employees and no operations other than to serve as a holding company for other Cassens-related entities."  *Rosenberg*, Doc. 97, p. 8.  As a holding company, "Cassens Corporation was not the owner, lessor, or distributor of the trailer at issue," was not "involved in the design or manufacture of the rig at issue [and did not] participate in the transactions at issue."  *Sandage,* Doc. 90, p. 10.  In each case, the undersigned found that *Cassens* Corporation had no purpose except to serve as a holding company for other Cassens-related entities and, thus, had been fraudulently joined.  *See id.*  Accordingly, the Court  dismissed Cassens Corporation as a Defendant in each action.  *Id*.  On the basis of these prior proceedings, the Court finds that the requirement of Fed.R.Evid. 201(b) has been satisfied in this case.  Accordingly, the Court takes judicial notice that Cassens Corporation is a holding company, and as such, did not own, lease, distribute, design or manufacture the rig at issue.

Plaintiffs next argue that, if the Court determines that Cassens Corporation is a holding company, it is still properly joined because it is directly liable as a participant in the conduct of Cassens & Sons and Cassens Transport Company.  Plaintiffs cite ***Forsythe v. Clark USA, Inc***., **836 N.E.2d 850 (Ill.App. 2005)**, where the Illinois Court of Appeals stated that, under the direct participant liability theory, "'. . . where a holding company directly intervenes in the management of its subsidiaries so as to treat them as mere departments of its own enterprise, it is responsible for the obligations of those subsidiaries incurred or arising during its management.'" ***Forsythe,* 836 N.E.2d at 854-55 (*quoting Consolidated Rock Products Co. v. Du Bois***, 312 U.S. 510, 524 (1941))**.

However, even if the Court were to agree that Cassens Corporation "directly intervenes in the management" of Cassens & Sons, so as to treat it as a "mere department[] of its own enterprise," *see Forsythe,* **836 N.E.2d at 855**, Plaintiffs' argument must fail because Cassens & Sons is not subject to liability in this matter, *supra*.  Because Cassens & Sons is not liable, no liability can flow from it to its parent company, and Plaintiffs' argument is moot.

In a third attempt to impute liability to Cassens Corporation, Plaintiffs contend that it is liable for the actions of Cassens Transport under the theory of direct-participant liability.  The Court notes that Plaintiffs use the word "undisputed"  or "indisputably" rather carelessly, stating, *e. g.,* "It is undisputed that Cassens Corporation had Cassens Transport purchase (or otherwise acquire for use) the rigs."  First, Plaintiffs' allegations are disputed. Second, they offer no evidence to support this claim, neither deposition testimony nor affidavit.  Cottrell argues that, to the contrary, Cassens Corporation, as a holding company, had no involvement in determining what rigs Cassens Transport purchased.  Nonetheless, as set forth above, a holding company can become responsible for the obligations of its subsidiaries if the holding company directly intervened in the management of its subsidiary and the obligation arose during its management. ***See Forsythe,*** **836 N.E.2d at 854-55**.

Plaintiffs seek to impute liability to Cassens Corporation for directly intervening in the management of its subsidiary through the Corporation's  Personal Injury Loss Control Program.  Doc. 22, Exhibit D.  Specifically, Plaintiffs allege that Cassens Corporation is directly liable for liability arising from Cassens Transport Company's using the rig at issue because Cassens Corporation interfered with Cassens Transport's operations and directly managed its Loss Control Program.

Cottrell contends that Cassens Corporation did not implement the Loss Control Program and did not have specific control over the activity that caused the accident.  Furthermore, Cottrell argues that there is no showing that the enactment of the Loss Control Program was meant to benefit only Cassens Corporation and that it was not in the interests of Cassens Transport Company.

The Court has thoroughly review the Loss Control Program and the letter regarding the use of proper footwear in the work environment.  Doc. 22, Exhibits D, E.  The program clearly was introduced by Cassens Corporation as part of an overall program for Cassens Transport to promote safety and prevent accidents.  It can scarcely be read otherwise because it specifically states, "The management of the Cassens Corp. has two primary concerns: the quality of service we provide and the safety of our people who provide that service.  To assure that our terminals, and related work facilities are as safe as possible, we have adopted a Loss Control Program that encompasses all operations related to the transportation process in which we are engaged."  *Id*. Exhibit D, p. 1. The document is signed by Allen Cassens, President of Cassens Corporation, and by Albert Cassens, Chairman.  *Id*.  The Employee Agreement within the document calls for the employee to acknowledge having read and received the "Cassens Transport Co. Loss Control Program Manual."  *Id*. p. 2.  The manual also provides that "Cassens Corp. takes full responsibility for providing a safe working environment for its employees."  *Id*. p. 4.  Finally, there is a specific section within the manual directed to the safety of haulaway drivers.  *Id*. p. 20.  The Court concludes that Cassens Corporation adopted a program to provide for the safety of Cassens Transport employees.

Cassens Corporation also expected benefits to redound to it through this program.

10

The manual states, "The efficiency of any business related operation can be measured directly by its ability to control unnecessary loss on a consistent basis.  Accidents resulting in personal injury, damage to property and equipment represent needless waste.  Needless waste makes survival impossible, thus will not be tolerated." *Id.*, p. 4.  Clearly, Cassens Corporation intervened in the operations of Cassens Transport as to providing a plan for employee safety and expected to benefit thereby.

However, Plaintiffs' argument fails on two grounds.  First, Plaintiffs offer no evidence that Cassens Corporation, through its Loss Control Program, exercised control over the design and testing process of Cottrell trailers or undertook to control what rigs Cassens Transport purchased.  ***See United States v. Bestfoods*, 524 U.S. 51, 64-65 (1998) (distinguishing derivative cases from those in which "the parent is directly a participant in the wrong complained of") (citation omitted)*; see also Esmark v. National Labor Relations Board,* 887 F.2d 739, 756-57 (7th Cir. 1989) (describing the theory of direct participation by a parent corporation as "transaction-specific," stating that the parent ". . . may be held liable for the wrongdoing of a subsidiary where the parent directly participated in the subsidiary's unlawful actions.")**.  Thus, Plaintiffs fail to show in what way the Loss Control Program resulted in injury to them.

Second, Plaintiffs offer no evidence that the Loss Control Program was "plainly contrary to the interests of the subsidiary yet nonetheless advantageous to the parent," ***see Forsythe v. Clark USA*, 864 N.E.2d 227, 239 (Ill. 2007) (*citing Bestfoods*, 524 U.S. 51 at 70 n. 13)**.  In ***Forsythe***, the plaintiffs alleged that employees of an oil refinery were killed because of the budgetary strategy of the parent company which minimized safety and training for its subsidiary in order to maximize profits for itself.  ***Id* at 231**.  Thus, a necessary element of direct-participant

liability was met, *i. e.,* the allegation that the employees were injured as a result of the parent company's strategy that was intended to advantage the parent at the expense of its subsidiary. Unlike ***Forsythe***, Plaintiffs here acknowledge that the Loss Control Program was "aimed at reducing personal injuries resulting from on-the-job accidents" and fail to show how the  Program was advantageous to Cassens Corporation and contrary to the interests of Cassens Transport.  Thus, Plaintiffs fail to meet a necessary element of direct-participant liability.  The Court concludes that Plaintiffs cannot impute liability to Cassens Corporation through the Corporation's Loss Control Program.

For the foregoing reasons, the Court finds that there is no reasonable possibility that Plaintiffs can maintain their cause of action against Cassens Corporation and finds that Cassens Corporation has been fraudulently joined.  Consequently, the Court will disregard the citizenship of Cassens Corporation in determining jurisdiction and **DISMISSES** ***with prejudice*** Defendant Cassens Corporation from this cause of action.

### Jo Ann Shashek Trust and Albert Cassens FLP[2]

Plaintiffs allege that Jo Ann Shashek Trust and Albert Cassens FLP[3] "sold, leased, participated and profited in the placement of the rig in question into the stream of commerce." Complaint, Count XI, ¶ 7.   The counts pleaded against the trust and the partnership sound in strict liability and negligence.

---

[2]The Court notes that the counts in Plaintiffs' complaint are not numbered consecutively, in that they are numbered I through XV, followed by a repeat of the numbers XI through XIII. In order to prevent further confusion, the Court will construe the final three counts as being numbered XVI through XVIII.

[3]An FLP is a family limited partnership.  Accordingly, for both clarity and simplicity, the Court will refer to the Albert Cassens FLP as "the partnership."

In Plaintiffs' motion to remand, they make no argument as to these entities except to state that each is a citizen of Illinois, and, as such, cannot have been joined to defeat diversity. The Court has considered and rejected this argument, *supra*. **See *Wilson,* 257 U.S. at 97**.  Plaintiffs have not, as Cottrell suggests, conceded these claims.  Nonetheless, because Plaintiffs put forward no other reason to defeat Cottrell's claim that the trust and the partnership have been fraudulently joined in this action, the Court finds that there is no reasonable possibility that Plaintiffs can maintain their current cause of action against the JoAnn Shashek Trust and Albert Cassens FLP. The Court finds Plaintiffs' joinder of JoAnn Shashek Trust and Albert Cassens FLP fraudulent, done solely to defeat federal jurisdiction. Consequently, the Court will disregard the citizenship of the trust and the partnership when determining diversity and **DISMISSES *with prejudice*** Defendants JoAnn Shashek Trust and Albert Cassens FLP from this cause of action.

## 2.    Albert Cassens' citizenship

In Cottrell's removal notice, it does not claim that Defendant Albert Cassens ("Cassens") was fraudulently joined.  Instead, Cottrell alleges that Cassens is a citizen of Montana. Plaintiffs dispute Cottrell's allegations and assert that Cassens is a citizen of Illinois.

According to the affidavit of Albert Cassens' daughter, Kay Cassens, in August, 2003, Albert Cassens voluntarily decided to move to Montana because of health reasons.  Doc. 29, Affidavit of Kay Cassens .   Albert Cassens was competent at the time that he moved but was adjudicated incompetent as of April 5, 2006, whereupon she was appointed his guardian. *Id*.  Albert Cassens lives in Montana, and both he and Kay Cassens, as his guardian, intend that he will remain in Montana. *Id*.

Plaintiffs argue that Cassens is an Illinois citizen.  They provide a voter registration

13

card from the Madison County Clerk's Office, indicating that Cassens was an active voter as of January 24, 2006.  Doc. 22, Affidavit of David C. Nelson.  Furthermore, Plaintiffs cite two cases involving the alleged involuntary removal of Cassens from Illinois.  *See Cassens v. Alexander*, Civil No. 05-372-GPM (S.D.Ill.) (case dismissed on plaintiff's motion for voluntary dismissal of all claims), *Cassens v. Cassens*, Civil No. 06-186-GPM (S.D.Ill.) (finding that Defendants failed to carry their burden to establish that Albert Cassens had established a new domicile in Montana).

That Cassens is still registered to vote in Illinois, while some evidence of intent  to return to Illinois, is certainly not dispositive of the issue.  ***See, e. g., Galva Foundry Co. v. Heiden, 924 F.2d 729, 730 (7th Cir. 1991) (changing voter registration, driver's license or tax status is not enough to confer citizenship for diversity purposes because it would be too easy to manipulate the court's jurisdiction)***.  Moreover, Kay Cassens attests that Cassens has not voted in Illinois since his move to Montana and that his voter registration was not changed because it was unnecessary, given his physical condition.  Affidavit of Kay Cassens.  Finally, Chief Judge Murphy did not find in either of the cases cited by Plaintiffs that Cassens had not established a domicile in Montana.

Plaintiffs assert that Cassens is not capable of the requisite intent required to change his domiciliary and citizenship.  Plaintiffs cite the Order of Guardianship but have, apparently, failed in their intent to attach it as an exhibit.  Even if the Order had been attached, it would not have been dispositive of this issue.  Plaintiffs have failed to controvert the evidence that Albert Cassens was competent when he left Illinois in 2003, that he was not adjudicated incompetent until 2006 and that he is a citizen of Montana.  *See* Affidavit of Kay Cassens.  Accordingly, the Court finds that the Albert Cassens is not a citizen of Illinois, that his citizenship is diverse from that of Plaintiffs, and

14

that, as such, his citizenship does not destroy this Court's jurisdiction.

### 3.  Amount in controversy

The Seventh Circuit, in *Meridian Security Insurance Co. v. Sadowski*, **441 F.3d 536**

**(7th Cir. 2006)**, clarified the standard to be used in evaluating the amount in controversy in cases

removed from state court to federal court in diversity.  The court explained that:

> a proponent of federal jurisdiction must, if material factual allegations are
> contested, prove those jurisdictional facts by a preponderance of the
> evidence.  Once the facts have been established, uncertainty about whether
> the plaintiff can prove its substantive claim, and whether damages (if the
> plaintiff prevails on the merits) will exceed the threshold, does not justify
> dismissal . . . . Only if it is "legally certain" that the recovery (from plaintiff's
> perspective) or cost of complying with the judgment (from defendant's) will
> be less than the jurisdictional floor may the case be dismissed.

*Id.* **at 543**.  A removing party "need not show that the plaintiff will prevail or collect more than [the

jurisdictional amount] if he does." *Rising-Moore v. Red Roof Inns, Inc.*, **435 F.3d 813, 816 (7th**

**Cir. 2006) (emphasis omitted)**.  Rather, the burden is to show "what the plaintiff hopes to get out

of the litigation; if this exceeds the jurisdictional amount, then the case proceeds in federal court

unless a rule of law will keep the award under the threshold." *Id*.

Plaintiffs contest that the amount in controversy has been met, asserting that their

claim is for only in excess of $50,000.  Plaintiffs state that Cottrell has failed to present competent

proof that the amount in controversy has been met.

The amount in controversy is determined by evaluating the plaintiff's complaint "and

the record as a whole." *Schimmer v. Jaguar Cars, Inc.*, **384 F.3d 402, 404 (7th Cir. 2004) (*citing***

***Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309 F.3d 978, 983 (7th Cir. 2002).**

***Accord Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993) (Generally, to determine amount**

**in controversy in removal cases, the court looks "at plaintiff's state court complaint, along**

15

**with the record as a whole.")**.  However, the Court may examine only the evidence which was available when the case was removed or which sheds light on the situation existing at the moment of removal.  *Harmon v. OKI Systems*, **115 F.3d 477, 479-80 (7th Cir. 1997)**.

Michael Sargent alleges that he sustained severe, permanent and disfiguring injuries to his low back and related areas, and that he will continue to suffer pain and mental anguish from these injuries.  Michael Sargent claims that he has lost wages and has been required to expend large sums of money in order to obtain medical treatment.  He also claims that he has been damaged in his capacity to earn wages in the future and will be required to expend additional sums in the future for vocational rehabilitation and/or convalescent care.  In addition to Michael's claims, his wife, Jacqueline Sargent, seeks damages for allegedly having lost Michael's support and services.  In Count XV, Michael Sargent seeks compensatory damages in the amount of $50,000 and exemplary damages in the amount of $50,000.  According to Cottrell, Plaintiffs' attorney has certified that the amount in controversy exceeds $50,000.  *See* Removal Notice, Doc. 2, p. 6.

In *Rubel v. Pfizer, Inc.*, **361 F.3d 1016 (7th Cir. 2004)**, the Seventh Circuit announced:  "removal is proper if the defendant's estimate of the stakes is plausible; plaintiffs can't prevent removal by refusing to concede that the controversy exceeds the jurisdictional minimum.**" *Id.* at 1020 (*citing Barbers, Hairstyling for Men & Women, Inc. v. Bishop*, 132 F.3d 1203 (7th Cir.1997) and *Shaw v. Dow Brands, Inc.*, 994 F.2d 364 (7th Cir. 1993).**

It is likely that Plaintiffs' claim exceeds $50,000, given claims for lost wages and future wages, medical expenses and vocational rehabilitation or convalescent expenses and loss of consortium.  Michael Sargent also seeks punitive damages, which raises the issue whether such damages can be considered in ascertaining whether the over-$75,000 bar has been cleared.

Punitive damages "may sometimes be taken into account in deciding whether the proper amount is in controversy." ***Clark v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 711-12 (7th Cir. 2007) (*quoting Del Vecchio v. Conseco, Inc.,* 230 F.3d 974, 978 (7th Cir. 2000))**. Specifically, punitive damages may be included in the amount in controversy when applicable state law expressly authorizes the recovery of punitives. ***Geschke v. Air Force Ass'n*, 425 F.3d 337, 341 (7th Cir. 2005);** *Smith v. American General Life and Acc. Ins. Co., Inc.***, 337 F.3d 888, 892-93 (7th Cir. 2003)**. The Seventh Circuit has explained:

> Where punitive damages are required to satisfy the jurisdictional requirement in a diversity case, a two-part inquiry is necessary. The first question is whether punitive damages are recoverable as a matter of state law. If the answer is yes, the court has subject matter jurisdiction unless it is clear 'beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount.

***Anthony v. Security Pacific Financial Services, Inc.*, 75 F.3d 311, 315 (7th Cir. 1996) (*quoting Cadek v. Great Lakes Dragaway, Inc.,* 58 F.3d 1209, 1212 (7th Cir. 1995)).**

Illinois law permits recovery of punitive damages if (a) a tort is committed with fraud, actual malice, deliberate violence or oppression, or (b) "the defendant acts wilfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." ***Brandon v. Anesthesia & Pain Management Associates, Ltd.*, 277 F.3d 936, 946 (7th Cir. 2002) (*citing Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 359 (Ill. 1978))**. Within those parameters, punitive damages may be recovered where, as here, Plaintiffs allege that Defendants acted willfully or with such gross negligence as to indicate a wanton disregard for the rights and safety of Michael Sargent. ***See Proctor v. Davis,* 682 N.E.2d 1203, 1216-1216 (Ill.App. 1997) (*citing Kelsay*, 384 N.E.2d at 353)**. So, punitive damages should be factored into the Court's amount-in-controversy calculus in the case

at bar.

When punitive damages can be counted toward the amount in controversy, the ratio of punitive to compensatory damages must fall within a permissible range. ***See, e.g., Gavin v. AT&T Corp.*, 464 F.3d 634, 641 (7th Cir. 2006); *Munro v. Golden Rule Ins. Co.*, 393 F.3d 720, 721-22 (7th Cir. 2004); *Smith,* 337 F.3d at 896.** Here, only about $25,000 in punitive damages would be needed to push the amount in controversy over the jurisdictional threshold, since over $50,000 is sought in compensatory damages. The ratio of compensatory to punitive damages falls within the acceptable range. Moreover, Michael Sargent asserts that he seeks in excess of $50,000 in punitive damages.

Thus, the amount in controversy clears the over-$75,000 mark, despite Plaintiffs' protestations to the contrary. Cottrell has satisfied its burden of establishing the amount in controversy, and Plaintiffs have not shown to a legal certainty that their claims are really less than the jurisdictional amount.

## III.   CONCLUSION

For the reasons stated above, the Court hereby **DISMISSES *with prejudice*** Defendants Cassens Corporation, Cassens & Sons, Inc., Jo Ann Shashek Trust and Albert Cassens FLP. The Court **DIRECTS** Plaintiffs to file an Amended Complaint which omits those claims directed to the now-dismissed Defendants on or before June 27, 2007.

This Court has subject matter jurisdiction over this cause of action pursuant to **28 U.S.C. § 1332**, and this case was properly removed**.** Accordingly, the Court **DENIES** Plaintiffs' motion to remand to state court (Doc. 22).

18

The Court further **DENIES AS MOOT** all pending motions filed by the now-terminated Defendants (Docs. 12, 19, 24, 39, 42).

**IT IS SO ORDERED.**

**DATED this 7th day of June, 2007**

**s/Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**

19